UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DEMAJIO J. ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:11-CV-231-CAN |
| | ) | |
| SGT. B. COLLINS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

On July 30, 2013, Defendants filed their Motion for Summary Judgement. On October 17, 2013, Plaintiff filed his response in opposition. On October 31, 2013, Defendants filed their reply. On January 22, 2014, the Court held oral argument on Defendants' motion for summary judgment. The Court issues the following opinion resolving Defendants' motion as discussed below pursuant to the consent of the parties and 28 U.S.C. § 636(c).

In their motion, Defendants seek summary judgment as to all claims raised by Ellis in this consolidated case.[1] Ellis's claims arise from two incidents of allegedly excessive force against him while he was a pretrial detainee at the St. Joseph County Jail in 2011. In this action, Cause No. 3:11-CV-231-CAN ("the '231 case"), Ellis raised claims based on allegations that six correctional officers beat him without legitimate justification on March 23, 2011 ("the March Incident"). In his second case, Cause No. 3:11-CV-232-CAN ("the '232 case"), Ellis raised claims based on allegations that three officers were involved in improper use of pepper spray and a restraint chair on Ellis on May 9, 2011 ("the May Incident").

---

[1] Cause No. 3:11-CV-232-CAN consolidated into this action on February 7, 2013.

Ellis has alleged the following counts in both cases[2]: (1) excessive force under 42 U.S.C. § 1983 against Defendants Collins, Wilkey, Bachman, Gillette, Heath, and Rager in their individual capacities for their participation in beating Ellis during the March Incident; (2) excessive force under 42 U.S.C. §1983 against Defendant Olmstead in his individual capacity for his use of pepper spray on Ellis during the May Incident; (3) excessive force under 42 U.S.C. §1983 against Defendants Olmstead, Heath, and Wisnewski in their individual capacities for their securing and holding Ellis in the restraint chair during the May Incident; (4) municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) for failure to train and supervise correctional officers in the use of pepper spray, shower procedures, and the use of the restraint chair during the May Incident against St. Joseph County; (5) failure to intervene when Olmstead pepper-sprayed Ellis during the May Incident against Defendants Heath and Wisnewski; (6) battery against Defendant Olmstead for his use of pepper spray on Ellis during the May Incident; (7) battery against Defendants Olmstead, Heath, and Wisnewski for their securing and holding Ellis in the restraint chair during the May Incident; (8) false imprisonment against Defendants Olmstead, Heath, and Wisnewski for holding Ellis in the restraint chair during the May Incident; (9) civil conspiracy against Defendants Heath and Wisnewski regarding the use of pepper spray during the May Incident; (10) civil conspiracy against Defendants Olmstead, Heath, and Wisnewski regarding the use of the restraint chair during the

---

[2]The count numbers as outlined here do not directly correlate with any complaint document in either of the cases consolidated into this action. The Court has construed the counts at issue regarding the March Incident from this Court's order review, pursuant to 28 U.S.C. § 1915A, of Ellis's original *pro se* prisoner complaint in the '231 case. *See* Doc. No. 16 in the '231 case. In addition, the Court construed the counts at issue regarding the May Incident from Ellis's most recent amended complaint in the '232 case. *See* Doc. No. 42 in the '232 case.

May Incident. For the reasons discussed below, the Court grants in part and denies in part Defendants' motion.

**I.  RELEVANT BACKGROUND**

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

**A.  The March 23, 2011, Incident**

On March 16, 2011, after an incident involving intimidating statements toward staff, Ellis was reclassified as a "level *1* High Maximum Custody inmate for the safety and security of our facility." Doc. No. 64-2 at 17. In the days immediately prior to March 23, 2011, Ellis flooded his cell three days in a row and was observed putting feces in his hair. *Id.* at 15–16. On the morning of March 23, 2011, Ellis was placed in a restraint chair after failing to comply with officers' orders to be quiet following a verbal conflict with another inmate. Doc. No. 64-1 at 23–24. While in the restraint chair, Ellis stated that he was hearing voices and seeing things. As a result, Ellis was placed on suicide watch, which required that he be transitioned from the restraint chair into a green suicide smock. Officers from the Detention Response Team ("DRT"), who are specially trained to assist with high-risk moves of inmates who are assaultive or aggressive, were called in to take Ellis to the shower area where he could shower and then change into the suicide smock. Once in the shower area, Ellis's restraints were removed and Ellis was ordered to change into the suicide smock.

The parties dispute how Ellis conducted himself during his time in the shower room. However, all agree that the officers used force to take Ellis down to the floor. Ellis suffered

some injuries as a result of the incident and was taken to the medical area to be examined by a nurse. Medical records show no medical treatment for the injuries.

### B. The May 9, 2011, Incident

As of May 2, 2011, Ellis remained classified as a "level *1* High Maximum Custody Extreme Caution inmate for the safety and security of our facility." Doc. No. 64-2 at 14. On May 6, 2013, Ellis was again placed on suicide watch, this time for writing "die" on his torso. *Id.* at 23. During that week, he had also flooded his padded cell twice, refused orders to cuff up, and refused to get out the shower. *Id.* at 22–25. On May 9, 2011, Ellis flooded his padded cell for the third time by putting his blanket and suicide smock in the toilet. Doc. No. 64-1 at 15–16. He later defecated onto his bed cover and then spread the feces on the walls, floors, and window of his cell.

As a result, Officers Olmstead, Heath, and Wisnewski were then assigned to take Ellis to the shower to clean himself. When the officers arrived at his cell, Ellis was naked, covered in feces, and holding feces in his hand. The officers covered Ellis with a blanket and escorted him to the shower area where he was given a bar of soap to clean himself. While Ellis was showering, Olmstead stood immediately next to the shower stall viewing Ellis after keeping the shower curtain open.

Once again, the facts as to Ellis's conduct during the shower are disputed by the parties. In addition, the parties dispute Olmstead's statements to Ellis during the shower. The only facts agreed upon by the parties is that Olmstead sprayed Ellis with pepper spray while he was in the shower and that after the shower, Olmstead, Heath, and Wisnewski placed Ellis in a restraint chair. Beyond that, they disagree about how much pepper spray Olmstead released; the extent

4

that Ellis was allowed to decontaminate after being sprayed; how long Ellis remained in the restraint chair; how often he was checked while in the chair; and how many days passed before he was allowed to shower again. Ellis acknowledges, however, that he declined any medical attention from a member of the nursing staff who was called in while Ellis was in the restraint chair.

### C. St. Joseph County Jail Training

Jail policy requires that new officers shadow an officer until they attend Jail School, which is held annually. In addition, officers are not issued pepper spray until after they attend Jail School. At Jail School, officers are trained on ethics, defensive tactics, and legal issues. Specifically, officers are taught about the use force continuum, which is predicated on the principle that an officer is never to use more force than necessary to control a situation. Training includes proper techniques to be used based on the degree of compliance required by the inmate. Moreover, the training teaches officers which techniques never to use. Officers are also trained on the use of pepper spray at Jail School. Officers are sprayed with pepper spray as part of that training to understand how it feels. At Jail School, officers are also trained to use restraint chairs only when an inmate poses a threat to himself or is combative. In addition, the jail maintains a policy on showering.

Beyond the Jail School training, the Jail also holds regular supplemental training sessions every other Wednesday that officers attend if they are working that day. Topics for the Wednesday training sessions are determined based on recent events and concerns within the jail. These supplemental sessions reinforce what was taught in Jail School in the context of particular situations. Experienced officers who are part of the Detention Response Team ("DRT") also

5

receive specialized training on a regular basis to control aggressive or assaultive inmates during high-risk moves within the jail.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir. 1999).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to

accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted).

  **B.** **Ellis has waived his Failure to Intervene claim against Defendants Heath and Wisnewski; Civil Conspiracy claim against Defendants Heath and Wisnewski; and Battery and False Imprisonment claims against Defendants Olmstead, Heath, andWisnewski.**

In their memorandum in support of their motion for summary judgment, Defendants argued that Ellis failed to show that Defendants Heath and Wisnewski could have intervened in any constitutional deprivation against him. Ellis did not acknowledge Defendants' argument or presented any argument in opposition to Defendants' assertion in his response brief.

Defendants also argued that the record is devoid of an agreement, express or implied, between Heath and Wisnewski to support a finding of civil conspiracy to violate Ellis's constitutional rights as Ellis alleged in his complaint. Ellis failed to reference Defendants' argument or present any argument in opposition to this assertion in his response brief either.

Furthermore, Defendants argued that Ellis's state law claims for battery and false imprisonment against Defendants Olmstead, Heath, and Wisnewski are barred because Ellis failed to comply with the notice provisions of the Indiana Tort Claim Act. Once again, Ellis did not mention or argue against Defendants' argument.

Undeveloped arguments are waived. *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007) (citing *Wang v. Gonzales,* 445 F.3d 993, 999 (7th Cir. 2006); *Weinstein v. Schwartz,* 422 F.3d 476, 477 n. 1 (7th Cir. 2005)). Because Ellis did not oppose Defendants' claims in his response brief as described above, he has waived any such arguments. Therefore, the Court **GRANTS IN PART** Defendants' motion for summary judgment. [Doc. No. 62]. Defendants Heath and Wisnewski are entitled to summary judgment as a matter of law as to the

7

failure to intervene, civil conspiracy, battery, and false imprisonment counts against them related to the May Incident. In addition, Defendant Olmstead is entitled to summary judgment as a matter of law as to the battery and false imprisonment counts against him related to the May Incident.

    **C.    St. Joseph County is entitled to judgment as a matter of law on Ellis's Failure to Train and Supervise claim rasied pursuant to *Monell*.**

St. Joseph County is a municipality. By suing St. Joseph County, Ellis has necessarily sued the St. Joseph Board of Commissioners. *See Waldrip v. Waldrip*, 976 N.E.2d 102, 118 (Ind. Ct. App. 2012). The St. Joseph County Commissioners are required to establish and maintain a county jail. *See* Ind. Code § 36-2-2-24(a). The St. Joseph County Sheriff retains responsibility for administration of the jail and treatment of prisoners. *Waldrip*, 976 N.E.2d at 119 (citing *Weatherholt v. Spencer County,* 639 N.E.2d 354, 356 (Ind. Ct. App.1994)). Because Ellis's allegations are solely based on his treatment by jail officials while detained at the St. Joseph County Jail, his claims are only properly stated against the St. Joseph County Sheriff, not St. Joseph County. *See id.* This technical shortcoming in identifying the proper party likely derails Ellis's *Monell* claim against the County. Even if St. Joseph County, however, was the proper party for Ellis's *Monell* claim for failure to adequately train and supervise St. Joseph County Jail employees, it would be entitled to judgment as a matter of law.

Ellis alleges in this lawsuit that the County's failure to adequately train and supervise its jail employees caused his injuries, which amounted to a deprivation of his constitutional rights, during the March and May Incidents. Therefore, Ellis's cause of action arises under 42 U.S.C. § 1983, and St. Joseph County can only be held liable pursuant to official policy and not on a *respondeat superior* theory. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978);

8

*Woods v. City of Michigan City, Ind.,* 940 F.2d 275, 277 (7th Cir.1991). In addition, liability may attach in limited circumstances to a municipality where it fails to properly train. *Palmquist v. Selvik,* 111 F.3d 1332, 1344 (7th Cir.1997). Under 42 U.S.C. § 1983, a municipality may be held liable for failure to train its officers when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Palmquist,* 111 F.3d at 1344. In other words, the need for training is "so obvious" to municipal policymakers and the "inadequacy so likely to result in a constitutional deprivation" that failure to train represents municipal policy. *City of Canton*, 489 U.S. at 390. The deficiency in the training program must also be closely related to the ultimate injury. *Id.*at 391; *Palmquist*, 111 F.3d at 1345. The focus of the failure to train inquiry must be on the training program as a whole rather than on the effectiveness of the training on a particular officer. *Palmquist,* 111 F.3d at 1345.

Ellis relies upon the alleged confusion of Defendant officers during their depositions about the Jail's use of force policy to demonstrate that the Jail's training program was inadequate. In particular, Ellis explains that when presented with the paper copy of the Jail's Use of Force Policy, the officers were unable to confirm whether it was the Jail's policy and could not recall the last time they read the Jail's policy. Ellis pointed to deposition testimony showing that officers were similarly confused about the existence of policies on the use of pepper spray and restraint chairs. In addition, Ellis argues the inadequacy of components of the Jail's training program. For instance, Ellis suggests that a systemic problem exists with the Jail School inadequate because it occurs only once a year such that at least one Defendant had not even attended Jail School before being involved in the March Incident. Ellis also challenges the

adequacy of the supplemental Wednesday training because the content of that training is random without intentional efforts to train on the use of force, pepper spray, restraint chairs, or showering.  Ellis also discounts the Wednesday training because it is only held on Wednesdays such that officers who are not scheduled to work on Wednesdays have no access to the training.

At best, Ellis's arguments suggest that the Jail's training program did not effectively train particular officers.  But Ellis's arguments do not suggest that the overall training program demonstrates the County policymakers' deliberate indifference to the rights of inmates or that the inadequacy of the training program is so likely to result in a deprivation of an inmate's constitutional rights that the training program amounts to a municipal policy to deprive inmates of their rights.  In fact, Ellis acknowledges the existence and consistent implementation of the Jail School and Wednesday supplemental training components of the Jail's training program.  While Ellis challenges the content of the Wednesday training sessions, he provides no evidence to show that showering procedures, the use of force, pepper spray, and restraint chairs are not covered in Jail School.  In addition, Ellis fails to recognize other components of the overall training program.  In particular, Ellis ignores the shadowing requirement for new officers who have not attended Jail School as well as the specialized training that members of the DRT experience.

More importantly, the Court is not persuaded that the officers are confused about the content of the Jail's policies.  Even though the officers could not identify the paper version of the Jail's policies at their depositions, they were able to verbalize the core goals of the policies.  For example, the officers could explain the use of force continuum as well as noting that any use of force was inappropriate when dealing with inmates who were compliant ("the compliant

policy"). Ironically, Ellis argues that Defendants used excessive force despite knowing the "compliant policy." If that is true, the Jail's training accomplished its goals. Defendants knew when force techniques were proper and when they were not.

Furthermore, Ellis presents no evidence from municipal policymakers, either the County Board of Commissioners or the Sheriff, to suggest that they knew of constitutional deficiencies in the Jail's training program. Similarly, there is no evidence to suggest that the Commissioners or the Sheriff made conscience choices to ignore the constitutional deficiencies.

As a result, Ellis has not established any genuine dispute of material fact related to his failure to train and supervise claim against the County. Moreover, Ellis cannot show that the Jail's training program amounted to the deliberate indifference of County policymakers to the rights of inmates, including Ellis. Therefore, St. Joseph County is entitled to judgment as a matter of law on Ellis's failure to train and supervise claims. The Court **GRANTS IN PART** Defendants' motion for summary judgment accordingly. [Doc. No. 62].

### D. Genuine disputes of material fact exist precluding summary judgment on Ellis's Excessive Force claims against Defendants Collins, Wilky, Gillette, Bachman, Heath, Olmstead, and Wisnewski.

Under 42 U.S.C. § 1983, a person action "under color of" a law may be sued for "deprivation of" a constitutional right. Section 1983 creates a cause of action for damages against a governmental official in his individual capacity based on personal liability for deprivation of a constitutional right. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). The Fourteenth Amendment due process clause applies to a pretrial detainee's excessive force claim rather than the Eighth Amendment cruel and unusual punishment standard because pretrial detainees are not yet punishable under the law. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir.

2009). However, anything that violates the Eighth Amendment also violates the Fourteenth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> **1. Deputy Rager is entitled to summary judgment as a matter of law as to the excessive force claim against him related to the March Incident.**

"An individual cannot be held liable under § 1983 unless he caused or participation in alleged constitutional deprivation." *Mitchel v. Buncich*, 2:11-CV-91-PRC, 2013 WL 275592, at *16 (N.D. Ind. Jan. 24, 2013) (citing *Jenkins v. Keating,* 147 F.3d 577, 583 (7th Cir.1998)). "Although direct participation is not necessary, there must at least be a showing that the [individual] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion Cnty.,* 327 F.3d 588, 594 (7th Cir.2003). In their memorandum of support of the instant motion, Defendants noted Defendant Rager's statement that he was not involved in the March Incident despite Ellis's allegation. Ellis did not raise, much less develop, any argument rejecting Rager's statement in his response brief. Undeveloped arguments are waived. *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007) (citing *Wang v. Gonzales,* 445 F.3d 993, 999 (7th Cir. 2006); *Weinstein v. Schwartz,* 422 F.3d 476, 477 n. 1 (7th Cir. 2005)). Therefore, because Ellis has waived any argument to Deputy Rager's assertion that he was not involved in the March Incident, Rager is entitled to summary judgment as a matter of law on the excessive force claim raised against him. The Court **GRANTS IN PART** Defendants' motion for summary judgment as to Defendant Rager. [Doc. No. 62].

> **2. Genuine disputes of material fact exist regarding the excessive force claims against Defendants Collins, Wilkey, Bachman, Gillette, Olmstead, Heath, and Wisniewski for their conduct during the March and May Incidents.**

The "unnecessary and wanton infliction of pain" on a prisoner violates his rights under the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quotations omitted); *see also Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). However, not every "malevolent touch [by a corrections officer] gives rise to a federal cause of action." *Hudson*, 503 U.S. at 7. The use of *de minimis* physical force does not violate the Constitution "provided that . . . force is not of a sort repugnant to the conscience of mankind." *Id.* at 9–10. Pain, not injury, is the barometer by which the court assesses whether the force used is *de minimis. Lewis*, 581 F.3d at 475 (citing *Hudson*, 503 U.S. at 9).

If the court determines that the force used was more than *de minimis,* its constitutional analysis must then proceed to consider whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In order to survive summary judgment, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322. Force applied in a good faith effort does not rise to the level of being unnecessary and wanton. *Id*. In addition, force applied with a "penological justification" is not "per se malicious." *Filmore v. Page*, 358 F.3d 496, 504 (2004). In considering whether the use of force was an appropriate good faith effort or was inappropriately malicious or sadistic, the court may consider the following factors: (1) "the need for an application of force," (2) "the relationship between that need and the force applied," (3) "the threat reasonably perceived by the responsible officers," (4) "the efforts made to temper the severity of the force employed," and (5) "the extent of the injury suffered by the prisoner." *Lewis*, 581 F.3d at 477.

In this case, evaluation of the factors reveals genuine disputes of material fact that cannot be resolved through summary judgment. First, facts supporting Defendants' contention that force was necessary to subdue Ellis during both the March and May Incidents are clearly disputed. As to the March Incident, Defendants claim that Ellis did not comply with their order to put on the suicide smock and was making aggressive moves, including balling his fist, toward officers, especially Collins, while in the shower area necessitating the use of force. Ellis disagrees. Ellis indicates that he was complying with the order to put on the suicide smock when he was attacked. In addition, Ellis denies making any aggressive movements toward the officers.

As to the May Incident, Defendants contend that Ellis's conduct, including flinging fecal water on Olmstead while he showered and disobeying Olmstead's order to exit the shower, necessitated the use of one burst of pepper spray. Once again, Ellis disagrees and contends that he complied with all the orders given to him on May 9, 2011; that he was not flinging fecal water out of the shower; that he was not warned that he would be pepper-sprayed; and that Olmstead dispensed an entire can of pepper spray on him.

Second, the genuine disputes of fact identified above directly affect any evaluation of whether the force applied was proportional to the need for force. If Ellis's version of the facts is correct, he was a compliant inmate during both the March and May Incidents. According to undisputed jail policies, officers should not use force or pepper spray on compliant inmates. Therefore, if Ellis was compliant, the March takedown and beating as well as the May use of pepper spray may have been disproportionate applications of force to situations where no force was necessary or proper. However, Defendants clearly dispute whether Ellis was compliant in

either situation making any evaluation of this factor impossible without a finding of fact—a task outside the scope of the Court's authority on summary judgment.

Third, determining whether the officers reasonably perceived Ellis as a threat during the March and May Incidents also turns on the dispute over Ellis's compliance with officers' orders on both occasions. While it is reasonable that the officers, aware of Ellis's recent history of misconduct and agitation, were on heightened alert when dealing with him, it may well have been unreasonable for the officers use force and pepper spray as they did if Ellis did not specifically provoke them through disobedience or aggressive movements.

Fourth, it also remains unclear whether appropriate efforts were made to temper the severity of the force and pepper spray used against Ellis during the March and May Incidents. such an evaluation is highly fact sensitive. With facts in dispute, as discussed above, it is impossible at this time to determine whether the officers in either incident tempered the severity of the techniques they used to control Ellis.

Fifth, the extent of Ellis's injuries and resulting medical care favors a finding of a good faith effort to maintain and control discipline on the part of the officers involved in both Incidents. Use of force that results in minor injuries tends to show that the force used served a properly disciplinary purpose. *Frederickson v. Cooper*, 489 F.3d 887, 891 (7th Cir. 2009). Here, the parties agree that Ellis needed minimal medical care or refused care for his injuries following both Incidents. As such, this factor favors Defendants.

Evaluation of the malicious and sadistic factors above shows that the excessive force claims against Collins, Wilkey, Bachman, Gillette, Olmstead, Heath, and Wisniewski for their conduct during the March and May Incidents cannot be resolved on summary judgment.

15

Genuine disputes of material fact exist as to whether Ellis complied with officers' orders during the March and May Incidents; whether Ellis engaged in aggressive movements against Collins during the March Incident; whether Ellis flung fecal water toward Olmstead during the May Incident; and whether Olmstead used a single burst or a whole can of pepper spray on Ellis during the May Incident. Only a fact-finder may resolve these disputes. The Court cannot reach any conclusion of law without resolution of those facts. Therefore, the Court **DENIES IN PART** Defendants' motion for summary judgment on the excessive force claims against Defendants Collins, Wilkey, Bachman, Gillette, Olmstead, Heath, and Wisniewski [Doc. No. 62].

> **E.** **Defendants are not entitled to qualified immunity on the excessive force claims because genuine disputes of material fact regarding the parties' conduct during the March and May Incidents prevent a determination as to whether Defendants violated Ellis's constitutional right.**

Qualified immunity protects government officials such as correctional officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects an officer regardless of the error being a mistake of law or fact. *Groh v. Ramirez*, 540 U.S. 551, 567 (2004). However, when there is a "substantial, if not complete, overlap of the issue of immunity and the principal issue on the merits," a genuine dispute of material fact that precludes summary judgment on the merits cannot simultaneously justify qualified immunity for the public official who allegedly violated a constitutional right. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 435–36 (7th Cir. 1993).

In this case, Defendants have asserted qualified immunity as an affirmative defense. Defendants argue that qualified immunity applies in this case even if the Court finds that genuine

disputes of material fact exist as to whether Defendants used excessive force on Ellis during the March and May Incidents. Without citing any authority for this proposition directly, Defendants appear to rely on the proposition that qualified immunity is justified even when a public official's conduct is based upon a mistake of fact. At oral argument, Defendants' counsel suggested that Olmstead, for instance, could be entitled to qualified immunity even if he dispensed the pepper spray on Ellis based upon a mistaken determination that Ellis had heard his warnings and orders.

This argument does not address the question of whether qualified immunity would still be proper even if a triable dispute of fact as to Defendants' malicious or sadistic intentions—the central issue in Ellis's excessive force claims—existed. The Seventh Circuit considered a similar situation related to a Fourth Amendment claim. *Id.* The court affirmed the district court's finding that the defendant officers were not entitled to qualified immunity because the question of whether the officers had probable cause to arrest the plaintiff, which was central both to a decision on the merits and to a conclusion regarding qualified immunity, was a triable question of fact. *Id.*

Defendants here face the same challenge that the officers in *Maxwell* faced. Determining whether Defendants' violated Ellis's clearly established constitutional right, as required in making a qualified immunity decision, necessarily requires a determination of whether the right was violated through intentional malicious and sadistic conduct. Because the Court has already decided that any determination regarding the excessiveness of force used against Ellis is premature in light of the genuine dispute of material facts already discussed, Defendants are not entitled to qualified immunity on the excessive force claims at this time. Therefore, the Court

**DENIES IN PART** Defendants' motion for summary judgment as to qualified immunity for the excessive force claims. [Doc. No. 62].

### III. CONCLUSION

As discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment. [Doc. No. 62]. The Clerk is **INSTRUCTED** to enter judgment in favor of Defendants Heath and Wisnewski as the the failure to intervene, civil conspiracy, battery, and false imprisonment counts against them. The Clerk is also **INSTRUCTED** to enter judgment in favor of Defendant Olmstead as to the battery and false imprisonment counts against him. In addition, the Clerk is **INSTRUCTED** to enter judgment in favor of St. Joseph County as to the failure to train and supervise count against it. The Clerk is further **INSTRUCTED** to enter judgment in favor of Defendant Rager as to the excessive force claim against him and to term him as a party.

Ellis's excessive force claims against Defendants Collins, Wilkey, Gillette, Bachman, Olmstead, Heath, and Wisnewski will proceed to trial. In addition, because neither Defendants nor Ellis addressed the civil conspiracy claim against Defendant Olmstead in the instant motion for summary judgment, that claim will also proceed to trial. Therefore, in light of the Court's ruling, the Court now **SETS** a telephonic scheduling conference for **March 20, 2014, at 11:00 a.m. E.D.T.** to select an appropriate trial date and to determine whether the parties would prefer a bench trial or a jury trial. The Court will call all counsel listed on the docket sheet unless it is notified that specified attorneys need not be contacted. If, at the time of the scheduled conference, any counsel will not be at the telephone number identified on the docket, please contact chambers.

**SO ORDERED.**

Dated this 21st day of February, 2014.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge